## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

Dorothy A Smulley,
    Plaintiff,
      v.
Liberty Mutual Holding Company Inc;
Safeco Insurance Company of Illinois;
Liberty Mutual Insurance Company;
Howd & Ludorf LLC;
Phillip T Newbury Jr;
Berchem Moses PC;
Jonathan D Berchem;
Daniel H Kryzanski;
    Defendants

CIVIL ACTION No. 3:21-cv-1318-SRU

OCT 5 2021 PM2:19
FILED-USDC-CT-HARTFORD

## VERIFIED COMPLAINT

Plaintiff, Dorothy A Smulley (plaintiff), states the following.

### INTRODUCTION

**1.**    This is a 42 USC § 1983 action to determine the constitutionality of the collective defendants' actions in *Smulley v Safeco Insurance Company of* IL, FBT-CV19-6082597, Conn. J.D. Fairfield (underlying action now pending) [1], which caused punitive fines to issue against plaintiff at the rate of $75 per day.  Plaintiff paid all fees and taken all steps required by law to maintain this action.

**2.**    Pursuant to 28 USC §§ 2201, 2202 and Fed.R.Civ.P. 57, plaintiff further seeks a declaratory ruling addressing ambiguity and constitutionality of the appraisal clause contained in plaintiff's automobile insurance policy imposed upon plaintiff by Safeco and contained in the insurance policy in question.

### NATURE OF DISPUTE

**3.**    This action is arises out of an underlying state action.  Acting under color of

---

[1]    With the exception of Safeco, none of the defendants in this action are cited in the underlying action.

**1**

state law, the collective defendants jointly and severally seek to deprive plaintiff of her

constitutional rights under the Fifth, Sixth, Eighth and Fourteenth Amendments.

Defendant insurance companies are the principals. The named law firms and attorneys

act on behalf of the principals under the traditional principles of agency. The law firms

and attorneys are authorized to act in Connecticut under judicial license identified by

specifically assigned juris numbers. Attorneys so licensed are designated

Commissioners of Court pursuant to General Statute § 51-85 and are state actors. In

the underlying civil action, the defendants are use and abuse the judicial process to

force a waiver of plaintiff's statutory and constitutional rights. The state actors rely on an

appraisal clause contained in Part D of plaintiff's personal automobile insurance policy

which plaintiff argues is ambiguous as written and, therefore, unenforceable.

    **4.**    Connecticut General Statute § 52-410 and the Connecticut Supreme

Court's decision in *Success Centers, Inc. v. Huntington Learning Centers, Inc.,* 223

Conn. 761, 613 A.2d 1320 (1992) govern. The collective defendants misrepresent with

intent, statutes and case law. State court relied on the state actors' misrepresentations

which resulted in plaintiff's judicial action stayed indefinitely. To further force waiver of

plaintiff's rights, the state actors also induced state court to impose criminal sanctions

with limitless payment of $75 per day to the court. Plaintiff is a pro se in this matter and

also in the underlying action. Plaintiff sought but had been procedurally precluded from

appealing to the Connecticut Appellate and Supreme Courts because the underlying

action lacks a final judgment.

    **5.**    The complaint in the underlying action alleges Safeco Insurance Company

of Illinois (Safeco) was negligent and breached the contract of insurance when Safeco

refused to repair plaintiff's insured vehicle because Safeco's personnel, repair adjuster, Juan Carlos Maldonado (Maldonado), had previously conflicted on an unrelated matter with Ben Dituri (Dituri), manager at Traynor Collision Center [2], the repair facility where Safeco towed plaintiff's vehicle.  These conflicts were carried over from a time when Maldonado was employed by Traynor prior to joining Safeco and had nothing to do with plaintiff and the repair of her vehicle

6.    The underlying action also alleges Safeco was negligence when Safeco removed plaintiff's vehicle from Traynor to Breezy Point Auto Body Inc. [3] under the guarantee of repair and then refused to repair because, unknown to plaintiff, Safeco had financial disputes with Breezy's Paul Kristopik to which plaintiff was not a part.

## PARTIES

7.    Plaintiff is an individual residing in Connecticut and at all times relevant, was insured under an automobile insurance policy issued by Safeco which included physical damage coverage for plaintiff's vehicle.

8.    Defendant Safeco Insurance Company of Illinois (Safeco) is a subsidiary of Liberty Mutual Holding Company Inc. with a principal place of business at 175 Berkeley Street, Boston, Massachusetts.

9.    Liberty Mutual Insurance Company (Liberty Mutual) is a subsidiary of Liberty Mutual Holding Company Inc with a principal place of business at 175 Berkely Street, Boston, Massachusetts.

---

[2]    Traynor Collision Center is a defendant in the underlying action.
[3]    Breezy Point Auto Body Inc., is a defendant in the underlying action.

10.    Liberty Mutual Holding Company Inc (LMH) is parent company of Safeco and Liberty Mutual and exercises control over subsidiaries Safeco and Liberty Mutual [4] and has a principal place of business at 175 Berkely Street, Boston, Massachusetts.

11.    Safeco and Liberty Mutual issue insurance policies over a broad line of risks to both individual customers and commercial clients including those in Connecticut.

12.    Howd & Ludorf LLC (H&L Law) Juris 028228, is registered in Connecticut as a limited liability company with a principal place of business at 65 Wethersfield Avenue, Hartford, Connecticut 06114 and agent of record for Safeco..

13.    Phillip T Newbury, Jr. Juris 300144, is a managing member of H&L Law and provides services to Safeco on behalf of H&L Law.

14.    Berchem Moses PC (Berchem Law) Juris 022801, is registered in Connecticut as a professional corporation with a principal place of business at 75 Broad Street, Milford, Connecticut 06460 and agent of record for Traynor Collision Center.

15.    Jonathan D Berchem Juris 411781, is Vice President of Berchem Law and provides services to Traynor on behalf of Berchem Law.

16.    Daniel H Kryzanski Juris 408785, is a sole practioner with a business address at 30 Ferry Boulevard Suite 2, Stratford, Connecticut 06615, is agent of record for Breezy Point Auto Body Inc and provides services to Breezy.

## JURISDICTION AND VENUE

17.    An actual controversy exist among the parties for purposes of subject matter jurisdiction pursuant to 28 USC §§ 2201 and 2202.

---

[4]    https://www.libertymutualgroup.com/index.php/about-lm/investor-relations/financial-reports?year[2021]=2021, Second Quarter 2021 financial statements pg 7, viewed Sep.25, 2021.

18.     This court has federal question jurisdiction pursuant to 42 USC § 1983 where state actor defendants act under the color of law which action implicates constitutional questions of law and require interpretation of the Fifth, Sixth, Eighth and Fourteenth Amendments.

19.     This court has federal jurisdiction pursuant to the Commerce Clause because the business of insurance involves interstate commerce and thus is generally subjected to federal regulation under the Commerce Clause.. See *Group Life & Health Ins. Co. v. Royal Drug Co.*, 440 US 205, 256 Fn.18  (1979).

20.     Supplemental jurisdiction extends to any state law claims pursuant to 28 USC §1367.

21.     This court has personal jurisdiction over Safeco and Liberty Mutual because both are licensed and authorized to do business in Connecticut.  Personal jurisdiction over the LMH exist because as parent, LMH exercises control over in-state activities conducted by Safeco and Liberty Mutual.  Personal jurisdiction exist over H&D Law and Berchem Law because both are registered in Connecticut with the Secretary of State and therefore, are authorized to do business in Connecticut accordingly.  Personal jurisdiction over Newbury, Berchem, Kryzanski exist because all are registered as Commissioners of Court in Connecticut and perform services pursuant to General Statute § 51-85 and under traditional principles of agency.

22.     Venue is proper pursuant to 28 USC §1391 because plaintiff is a resident in the District of Connecticut and the events giving rise to the claim occurred here.

5

### *Safeco's  Auto Insurance Policy K283234*

**23.**     Safeco renewed a personal automobile insurance policy number K283234 to plaintiff and her spouse for the period January 1, 2018, to January 1, 2019.  Part D covered physical damage to insured autos and contained the appraisal clause in question (A1-6) —[5]—.

**24.**     The Declaration Sheet of the policy provides for physical damage to plaintiff's 2010 Chrysler Sebring Limited up to the Actual Cash Value (ACV) of the vehicle prior to an insured loss less a $500 deductible (A7).

### *Factual Background*

**25.**     On November 24, 2018, plaintiff was driving the vehicle in question on Interstate 80 near or around Du Bois, Pennsylvania, with her spouse sitting on the passenger seat.  Road conditions were icy and traffic halted.  As traffic resumed, plaintiff's vehicle skidded and hit the metal median.  Plaintiff's vehicle incurred physical damage to the driver's side front fender, left headlight, left front bumper.  Neither plaintiff nor her spouse were injured nor anyone else.  Air bags were not deployed.  No other vehicles were involved. Plaintiff timely contacted State Police.  No citations were issued.

**26.**     Plaintiff timely reported the accident to Safeco.  Irrespective of the physical damage, plaintiff's vehicle safely operated as if no accident occurred.  The vehicle was fully operational and functional, mechanically and electronically.  Plaintiff and spouse returned to Connecticut the same day after driving 380 highway miles post-accident without any mechanical and/or electrical problems whatsoever.

---

—[5]—     Appendix and page number will be cited (A__).

6

27.     Pursuant to the terms of the policy provisions, plaintiff made full and timely disclosure to Safeco.

28.     On December 5, 2018, Safeco's employee adjuster, Maldonado, after an on-site inspection and using third party computer software, valued plaintiff's vehicle pre-loss at $7,839.75.  Immediately thereafter and using third party computer software, Maldonado estimated repairs at $4,873.75 and authorized repairs.

29.     For reasons revealed during discovery, Maldonado's supervisor, Safeco employee Zackary Allyn (Allyn), refused to grant the auto repair facility authorization to commence repair.

30.     Instead, within a span of less than a week on two separate occasions, Allyn ordered Maldonado and one other to subtantially disassemble the front of plaintiff's vehicle without plaintiff's knowledge for the specific purpose to render the vehicle unrepairable.

31.     Per Allyn's instructions, Maldonado, using the same third party computer software, altered and manipulated line items of the original repair estimate, increased the line items selected, added new line items and manually changed the repair authorization to read total loss (second estimate).

32.     Also per Allyn's instructions, another manual manipulation was repeated at another site occupied by Breezy on the same third party computer software.  Breezy increased the line items selected and added new line items including $1,500 of statutorily prohibited costs, all for the specific purpose to render the estimate to read repairs in excess of the pre-loss vehicle value (third estimate).

7

**33.**     Safeco then denied the existence of the original estimate and declared the

third estimate as operative and falsely attributed all costs to plaintiff's accident.

### Procedural Background

**34.**     On January 22, 2019, plaintiff, as pro se, filed a complaint in Superior

Court, *Smulley v Safeco et al*, FBT-CV19-6082597 (amended as of right February 19,

2019) against Safeco and the two auto repair facilities, Traynor and Breezy.

**35.**     On March 11, 2019, Safeco filed an answer. with special defenses which

special defenses were stricken January 24, 2020, —⁶—. Trial was scheduled for July 15,

2020.

### Settlement Attempts

**36.**     During 2019, settlement was attempted through state court but thwarted by

Safeco who did not want to settle.  Plaintiff subsequently filed an offer of compromise

which statutorily expired within the 30-day period allowable.

**37.**     Another attempt was initiated February 6, 2020, though state court but

failed as a consequence of Safeco's delayed demand for a stay of all action.

### Safeco's Motion to Compel Appriasal and Stay Action

**38.**     Approximately one year after the accident and after discovery was in

process and most pleadings closed, October 25, 2019, Safeco filed a motion to compel

appraisal pursuant to General Statute § 52-410 (147.00; A9-14 —⁷—).  In the motion

Safeco negligently misrepresented, "Safeco made diligent efforts to resolve plaintiff's

claim…" when in fact, Safeco was instrumental in preventing settlement.  Safeco further

---

⁶     Traynor answered also.  Breezy did not answer.
⁷     State docket entry numbers will be cited (___.___).  Safeco's 147.00 is over sixty
pages and most not relevant.  Plaintiff will include relevant exhibits.

negligently misrepresented, "...appraisal will.. be dispositive of this action.." Thus, Safeco's motion to compel was a deliberate effort to replace judicial adjudication with a nonjudicial lay appraiser who would act as a nonjudicial lay arbitrator for all questions of law and fact raised in the complaint.  Plaintiff objected  (155.00).

**39.**    Four months later, February 21, 2020, state court ordered binding, unrestricted arbitration (145.15; A15).  Order 147.15 failed to include any substantive analysis or case law.  Thus, pro se plaintiff was disadvantaged to counter.

**40.**     Order 147.15 also stayed plaintiff's action pursuant to General Statute § 52-409 which had a dominio affect on significant issues pending. Order 147.15, along with thirteen others issued the same day and killed plaintiff's complaint which,

a.    compelled binding and unrestrictive arbitration when no such arbitration agreement existed;

b.    prohibited plaintiff from relying on discovery admissions from Safeco and Breezy which, but for Order 147.15, plaintiff's complaint would have been settled in view of the cumulative evidence discovered;

c.    prevented plaintiff from amending her complaint to add CCC Information Services Inc, now known as, CCC Intelligent Solutions Inc (CCC) identified during discovery. CCC provided Safeco and Safeco-controlled Breezy, the third party computer software used to falsify the repair estimates; [8, 9]

---

[8]    CCC is a well-known Software as a Service (SaaS) company and is in the business of collecting primarily automobile-related physical damage and valuation information.  CCC sells this information through CCC's proprietary real time software designed for claims estimating and vehicle valuations.  CCC clients are, for the most part, concentrated in the insurance industry which include LHC controlled Safeco and Liberty Mutual.

[9]    To preserve plaintiff's claim against CCC while the state court action was stayed, plaintiff filed an action in District Court, *Smulley v Safeco Insurance et al,* 3:20cv1888 (2021).  Plaintiff sought a declaratory ruling on duty to disclose as to both Safeco and CCC and alleged unfair trade practices against CCC.  Safeco was successful in having the entire complaint dismissed for failure to meet the statutory $75,000 threshhold. Plaintiff appealed to the Second Circuit (21-2124), which is now pending.

d.     struck down plaintiff's motion for compromise where the statutory thirty-day period certain in which the defendants were to respond had well expired (148.00, 152.00,148.15);

e.     prevented a settlement conference scheduled to begin March 2, 2020, under the mediation of another state court judge (171.10);

f.     granted Safeco and others, protective orders (159.10, 161.10) which prevented plaintiff's discovery admissions and evidence from adjudication (173.00 through 177.00); and

g.     prevented plaintiff from filing a certificate of closed pleadings.

**41.**     On March 11, 2020, plaintiff filed a motion to reargue and reconsider (183.00) which was denied (183.10).

### *State Court Interlocutory Appeal*

**42.**     On March 9, 2020, plaintiff filed an interlocutory appeal (182.00; AC44015). Neither Safeco, Traynor nor Breezy filed any briefs.

**43.**     However, after plaintiff's brief was filed, Safeco was successful in having AC 44015 dismissed (A17).  Safeco falsely attributed the appeal to General Statute §52-409[10]—a statute which authorizes a stay of proceedings because, in this case, the state court judge did not cite General Statute § 52-410 [11], the compel arbitration statute, irrespective of the fact the statute was implied in Order 147.15 and specifically cited in Safeco's motion to compel (147.00).  Simply put, Safeco was successful in having the Appellate Court of the state of Connecticut substitute form over substance (188.00).

**44.**     The Appellate's dismissal also cited *Success Centers, Inc. v. Huntington Learning Centers, Inc, supra.  Success* and case law subsequent, requires a § 52-410 action to be a separate action served by writ of summons and complaint, the disposition

---

[10]     General Statute § 52-409 stay is not a final judgment for purposes of appeal.
[11]     General Statute § 52-410 constitutes a final judgment for purposes of appeal.

of which provides grounds for an appealable final judgment.  Safeco's manipulations in state court which led to the omission of § 52-410 in Order 147.15 and Safeco's manipulation at the Appellate level, along with statutory requisites of § 52-410, are core issues here.

**45.**     Plaintiff filed for *en banc* reconsideration which was denied (186.00, 187.00).  Plaintiff's petition to the Supreme Court was also denied (189.00, 190.00)

### *Motion to Conform to Appellate Ruling*

**46.**     Upon remand and on December 21, 2020, plaintiff filed a motion in state court to conform Order 147.15 to the Appellate ruling  (191.00).  In addition to *Success,* plaintiff relied on *Zarchen v Union Equipment Co.,* 20 Conn.Sup. 44 at 47, 1212 A.2d 287 (1956) *(if he elects to apply for a court order, he must bring his application as provided in § 52-410).* Plaintiff further relied on *Romprey v Safeco Ins Co of America,* 129 Conn.App. 481, 21 A.3d 889, cert granted on other grounds, 302 Conn. 934, 28 A.3d 991 (2011).  In *Romprey,* an uninsured motorist matter, the Appellate cited lack of timeliness to compel arbitration because an application under § 52-410 was meant to be filed in the initial stages of litigation. Safeco objected (192.00) but offered no substantive or procedural basis.  State court denied plaintiff's motion without comment (191.50).

**47.**     Plaintiff moved for clarification (226.00) which state court denied (226.10).

### *Relief from Stay*

**48.**     On December 24, 2020, plaintiff moved for relief from stay (193.00). Plaintiff argued action against Traynor and Breezy were based upon different statutes governing auto repair facilities.  Therefore, the defendants' specific interest was distinct from Safeco.  Neither Traynor nor Breezy possessed a specific, personal or legal

interest in plaintiff's auto policy nor were they aggrieved either statutorily or classically. Plaintiff further argued her procedural and substantive rights of due process were violated as a result of the stay and plaintiff was entitled as of right to have her matter heard on the merits.  Plaintiff relied on *Goldberg v Kelly,* 397 US 254, 267-68 (1970) and *Northern Arapaho Tribe v Harnsberger*, 697 G.3d 1272, 1282 (10th Cir. 2012).  Traynor objected (196.00).  Neither Safeco nor Breezy objected.  State court denied relief without comment (193.50).

**49.**     A few days later, though, state court issued Order (193.55; A18) and stated all parties were not subject to arbitration.  Nonetheless, the court relied on discretion to stay the entire proceeding.  Thus, the stay in essence was a civil contempt punishment (contempt No.1).

**50.**     Plaintiff moved for clarification or articulation (197.00) which the court denied without comment (197.50).

**51.**     Several months later and after substantial research in support, plaintiff moved for relief again (209.00).  Plaintiff argued neither Traynor nor Breezy moved for a stay.  Thus, their failures and Safeco's failure to object at any time should be considered in favor of plaintiff.  Plaintiff further argued discretion exercised should be in conformity with the spirit of the law relying on *State v Sierra*, 213 Conn. 422, 435, 568 A.2d 448 (1990) and *Snow v Calise*, 174 Conn. 567, 574, 392 A.2d 440 (1978).  Plaintiff also again argued due process pursuant to *Mathews v Eldridge*, 424 US 319, 334 (1976). Traynor objected (210.00). Neither Safeco nor Breezy objected.

**52.**     State court scheduled a remote hearing for April 6, 2021.  Safeco's Newbury and Traynor's counsel appeared.  Breezy's counsel Kryzanski did not.  The

court was unhappy with plaintiff's reliance on *Success Centers Inc v Huntington Learning Centers, supra,* as cited in the Appellate ruling.  The court admonished plaintiff's pro se status and insisted plaintiff obtain counsel.

**53.**     On April 8, 2021, state court denied relief (209.20; A19).  However, the denial failed to address the relief from stay.  Even though Safeco failed to file an objection, the court ruled, "...the appraisal process is not dependent on... Safeco... filing anything further..."  The court failed to provide any substantive or procedural basis for setting aside § 52-410 and *Success* case law.

***Plaintiff's Motion to Dismiss***

**54.**     On May 3, 2021, plaintiff filed a motion to dismiss with memorandum of law and affidavit (216.00 – 218.00).  Plaintiff argued statutorily, Safeco is required to file an application pursuant to § 52-410 and Safeco's failure to do so results in the court's lack of personal jurisdiction over plaintiff.  Plaintiff relied, *inter alia,* on *Lostritto v Community Action Agency of New Haven Inc,* 269 Conn. 10, 848 A.2d 418 (2004),

> ""[W]hen a particular method of serving process is set forth by statute, that method must be followed.... Unless service of process is made as the statute prescribes, the court to which it is returnable does not acquire jurisdiction.... The jurisdiction that is found lacking, however, is jurisdiction over the person..."

*Lostritto,* 269 Conn at 31.

**55.**     In response, Safeco filed a one paragraph objection demanding arbitration (222.00) without memorandum or counter affidavit.  Neither Traynor nor Breezy objected. After a remote hearing June 28, 2021, the court denied the motion to dismiss citing, "...the court has personal jurisdiction based on the plaintiff's filing of the complaint thereby implicating the court's jurisdiction to issue such rulings." (216.20; A20).  None of

13

the relevant issues raised were addressed so plaintiff moved for clarification (226.00).

The motion was denied without comment (226.10).

## Ambiguity of Appraisal Clause

56.     In plaintiff's motion to dismiss, plaintiff also argued the appraisal clause

contained in Part D of the insurance policy is ambiguous as written for several reasons.

First, section B. of the appraisal clause guarantees the rights of the insurer are not

waived by invoking the clause but fails to provide the same nonwaiver to the insured.

Plaintiff further argued the Appellate dismissed plaintiff's appeal because Order 417.15

was interlocutory only pursuant to § 52-409 because Safeco failed,

> "to institute an entirely distinct legal action, by separate writ of summons
> and complaint, in order to obtain an order directing the opposing party to
> proceed with arbitration."

*Levine v Advest Inc,* 244 Conn. 732, 740, 714 A.2d 649 (1998).

57.     Second, the appraisal clause creates disparate treatment toward the

insured which, in this case, is plaintiff.  General Statute § 52-408 cites,

> "An agreement for an appraisal, the decision of which is not conclusive as
> to the ultimate rights of the parties, is not a submission to arbitration."

*Mott v Gaer Bros,* 22 Conn.Supp. 449 (1961).

58.     Third, automobile physical damage insurance is a highly regulated

segment of the insurance industry.  Licensed motor vehicle damage appraisers are not

licensed to arbitrate.  Nor are qualified arbitors licensed to appraise motor vehicles or

any damage thereof.  Thus, state court, in determining the appraisal clause is an

agreement to arbitrate, is ambiguous and thus, unenforceable.

59.     Fourth, the appraisal clause fails to provide for a period certain as to when

the clause may be invoked.  Safeco's motion to compel was filed a year after plaintiff's

14

accident and when court proceedings were well established, pleadings just about ready

to be closed and discovery completed as to Safeco and Traynor. The court failed to

consider the significant prejudicial harm imposed upon plaintiff to her detriment and if

consideration was made, such consideration was inadequate.

      **60.**     Fifth, the appraisal clause in an automobile insurance policy Part D is

worded differently than appraisal clauses found in various insurers' homeowners

insurance policies. Plaintiff searched but could not find any case law which supported

binding and unrestrictive arbitration. Thus, Safeco's motion as interpreted by state court

Order 147.15 is an issue of first impression which requires a judicial review of the

record. State court refused to articulate. Order 209.20 where Safeco is not required to

do anything further is puzzling because the court failed to provide a statutory or

procedural foundation in support.

      **61.**     Sixth, ambiguity is exacerbated by *Klass v Liberty Mutual Ins. Co,* a

matter pending before the state Supreme Court, No. 20451. SC 20451 was argued

March 25, 2021, the opinion on which is pending. In *Klass*, a homeowners roof damage

claim, the plaintiff served a § 52-410 application on Liberty Mutual by writ of summons

and complaint to compel appraisal. Because a separate action was filed, Liberty

Mutual's objection constituted an appealable final judgment. Liberty Mutual's appeal

was transferred to the Supreme Court and argued,

> "Liberty Mutual's continued position [is] that the issue of coverage be
> determined by a court prior to any appraisal. As discussed in *Milligan v
> CCC Info Services Inc,* 920 F.3d 146 (2d Cir. 2019),
>
> "Whether a loss is covered is not the only legal question presented in an
> insurance case. Questions over the extent of coverage and how to define
> the amount of loss present legal questions of contract interpretation. The

dispute here concerns the meaning of 'reasonable purchase price to the insured on the date of loss of a new identical vehicle.' This is a legal question requiring the interpretation of Regulation 64."

*Milligan,* 920 F.3d at 154.

**62.**     Liberty Mutual's argument is the exact opposite of sister company Safeco in this instant matter.  Thus, two insurance companies with a common controlling parent, LMH, are playing fast and loose with the courts and, here with plaintiff.  The objective here and in *Klass* is to gain prejudicial financial advantage over the opposition.  Plaintiff raised the *Klass* action a number of times but state court failed to acknowledge this dichotomy.

### *Plaintiff's Supreme Court Pre Appeal Application*

**63.**     The vague and often blank explanations from state court as to why plaintiff's arguments failed required clarification. Thus, plaintiff's pre-appeal application pursuant to General Statute § 52-265a was such an attempt.  State court left plaintiff's complaint permanetly suspended with no future of any adjudication on the merits. Plaintiff vehicle remains unrepaired in the possession of Safeco-controlled Breezy since December, 2018.  The front of the car is in complete disassembly, the windows left opened and debris all over.  Plaintiff's property was not only taken without any just compensation but destroyed with intent.  All the result of Safeco's distortion of facts, falsification of repair estimates and most of all, delayed adjudication by masterfully manipulating Connecticut state courts.

**64.**     On July 14, 2021, plaintiff timely submitted the pre appeal application. The clerk returned the application for a procedural error and granted additional time to remedy the error and refile as timely.  Plaintiff did remedy and refiled July 19, 2021.

Plaintiff sought resolution of the ambiguity of the appriasal clause.  Plaintiff further discussed Safeco's collateral attack on the Appellate's September 23, 2020 ruling and requested clarification regarding *Success Centers v Huntington Learning Centers, supra.*

65.    On July 22, 2021, Safeco filed an objection citing an untimely application when in fact, the application was to be considered timely.  Unfortunately, as soon as Safeco's objection was filed, plaintiff's application was denied as untimely.

### *The Court's Punitive Fines*

66.    Safeco filed a motion for judgment of nonsuit May 7, 2021 (223.00). Plaintiff objected (224.00) on grounds of inequitable conduct of Safeco's continual failure to comply with § 52-410 and the Appellate ruling citing *Success Centers v Huntington Learning.*  State court raised the nonsuit during the June 28, 2021, remote hearing.  And, as before, state court admonished plaintiff for her pro se arguments. The court's criticism at the time felt extraordinarily long but in reality, lasted around ten minutes.  Plaintiff was embarrassed, insulted and demeaned.

67.    On September 10, 2021, and in retaliation, state court issued Order 223.50 (A21-29) which plaintiff asserts is clearly erroneous as a matter of law.

a.    The court relies on General Statute § 38-98.  Section 38-98 was transferred, repealed or obsolete.  The citations listed in support of § 38-98 are inapplicable to an automobile physical damage appraisal clause for the reasons previously argued (see ¶¶ 44-55).

b.    *Giulietti v. Connecticut Ins. Placement Facility,* 205 Conn. 424, 534 A.2d 213 (1987) is a homeowners vandalism claim.  State court's argument is misplaced.  In

*Secord v. Chartis Inc*, No. 09 Civ. 9934 (SAS)(FM) (S.D.N.Y. Mar. 7, 2011), the *Giulietti*

analysis was rejected where,

> "The problem with [the magistrates report and recommendation] analysis is [the
> magistrate]... consider[ed] what the parties could have done, not what they did.
> [The insurer] could have included a general arbitration clause in its Policy, but it
> did not. Alternatively, the parties could have expressly authorized the appraisers
> to decide scope and coverage issues in determining loss amount, but they did
> not. What the parties did, however, was alert this Court to a legal dispute that
> must be resolved as a prerequisite to bringing suit. The appraisers will be able to
> determine the amount of the loss only after this Court separates the losses
> attributable to the blasting  activities (covered) from those attributable to general
> wear and tear (not covered). To direct the parties to proceed with an appraisal,
> before the exact contours of insurer liability have been judicially established,
> would place the proverbial cart before the horse."

*Secord v Chartis, supra.*

  c.  State court's *Steiner v. Middlesex Mutual Assurance Co.,* 44 Conn. App.

415, 689 A.2d 1154 (App. Ct. 1997), was homeowners fire loss.

  d.  *Middlesex Mutual Assurance Co. v. Clinton, 3*8 Conn. App. 555, 662 A.2d

1319 (App. Ct. 1995) was a homeowners fire loss where a separate application under

General Statute § 52-410 was served by writ of summons and complaint thus supporting

plaintiff's reliance on the Appellate ruling citing *Success Centers v Huntington Learning*

*Centers, supra.*

  e.  State court's conclusion an automobile physical damage appraisal clause

is a standard homeowners fire insurance policy appraisal clause is erroneous when in

fact, appraisal clause language is dependent upon the type of insurance policy issued.

And, in automobile physical damage, the appraisal clause language is dependent upon

the insurer because each insurer tweaks the clause in a different yet significant way.

  f.  State court stated, "She maintains that this court is without authority to

grant a motion for arbitration under § 52-409..." but state court failed to include the fact

the Appellate ruling of September 23, 2020, stated as such because § 52-409 is applicable only to a stay.

g.      State court further stated, "Section 52-409 applies when an action is pending…  On the other hand, § 52-410 applies when no action is pending between the parties…" See pg.6   But the statutes do not read as such.  State court contradicted *Success* and the Appellate ruling of September 23, 2020.  And yet, in quoting *Success* (see pg.7), state court reversed and cited exactly what the Appellate ruled in this matter.

h.      State court cited *KND Corporation v Hartcom, Inc*, 5 Conn. App. 333, 497 A.2d 1038 (App. Ct. 1985), where, "The dispositive issue in this appeal is whether, pursuant to General Statutes § 52-409, the defendant was entitled to a stay of this proceeding pending arbitration. We find that it was."  State court's emphasis as quoted (see pg.8) has been replaced by *Success* where, in 1992, seven years later, the Supreme Court opined, "Because, however, a civil action must be pending for a § 52-409 order to be issued, we have held that such an order is interlocutory and, therefore, not appealable."

**68.**      The Second  Circuit, Connecticut Supreme Court and Connecticut Appellate Court have held questions of law regarding coverage issues must be addressed before an appraisal takes place.  See *Ice Cube Building LLC v Scottsdale Insurance Co,* No.3:17cv973(VAB) (D. Conn. June 18, 2018) *(issues are antecedent questions for the court)* citing *Fishman v Middlesex Mut. Assur. Co,* 4 Conn. App. 339, 352, 494 A.2d 606 (1985) *(same);*  see also, *Covenant Ins. Co.* v. *Banks,* 177 Conn. 273, 280, 413 A.2d 862 (1979) *(same).*

**19**

69.     State court's characterization of plaintiff's efforts to obtain a substantive opinion on the core issues as a refusal to comply is incorrect.  Plaintiff has definitively informed state court both in her motion practice and repeated at the June 28, 2021, remote hearing, plaintiff's obedience of court orders.  Plaintiff's efforts have always been to comply with relevant general statutes and the findings of the Appellate and Supreme Courts.  Unfortunately, plaintiff's arguments have been miscontrued.  State court substituted objective substantive and procedural law for the court's own subjective opinion.  Commissioners of Court versus a pro se.  Clearly, plaintiff's due process rights mandate consideration.

70.     The collective attorneys are deemed Commissioners of Court pursuant to General Statute § 51-85.  The attorneys also speak as agents on behalf of their respective law firms.  Thus, the agents are duty bound to serve the principal's interests.  As agents, by misrepresenting material facts, omitting statutory mandates with intent to deceive, and, *inter alia*, pleading countrapundal positions under common parent control, all serve to mislead state court and cloud the docket.

### *Fines imposed are Criminal*

71.     State court Order 223.50 issued punitive sanctions of $75 per day for unlimited days to coerce plaintiff to waive her due process rights for a judicial resolution of her complaint and accept nonjudicial adjudication.  Sanctions imposed are consider synonmyous with contempt.  See *Cheng v GAF Corp,* 713 F.2d 886, 889-90 (2d Cir. 1983).

72.     The contempt fines imposed and the manner in which the court ordered, constitute criminal contempt.  In *Mine Workers v Bagwell,* 512 US 821 (1994), the

"[United States] Supreme Court considered the distinction between civil and criminal

contempt.  The case involved whether contempt fines levied against the Mine Workers

Union for violations of a labor injunction were "...coercive civil fines or [were] criminal

fines, which constitutionally, could be imposed only through a jury trial..."  The Supreme

Court concluded, ..."the fines [were] criminal."  See *Mine Workers,* 512 US at 823.

> "The per diem fines that came to be used to coerce compliance with decrees
> were in most relevant respects like conditional prison terms.  With them, as with
> incarceration, the penalty continued until the contemnor complied, and
> compliance stopped any further punishment but of course did not eliminate or
> restore any punishment already endured."

*Mine Workers,* 512 US at 848, Fn.5.

> "Criminal contempt is a crime in the ordinary sense," *Bloom v Illinois,* 391 US
> 194, 201 (1968).  "[C]riminal penalties may not be imposed on someone who has
> not been afforded the protections that the Constitution requires of such criminal
> proceedings." *Hicks v Feiock,* 485 US 624, 632 (1988).  See *In re Bradley,* 318
> US 50 (1943) *(double jeopardy)*; *Cooke v United States,* 267 US 517, 537 (1925)
> *(rights to notice of charges, assistance of counsel, summary process, and to
> present a defense)*; *Gompers v Bucks Stove & Range Co.,* 221 US 418, 444
> (1911) *(privilege against self-incrimination, right to proof beyond a reasonable
> doubt.*

*Mine Workers,* 512 US at 826.

**73.**    The ex parte daily fine imposed by state court against plaintiff represented

punitive and criminal because the fine is for what state court perceived as a "completed

act of disobedience." *Gompers,* 221 US at 443.  Plaintiff cannot avoid or abbreviate the

harm through later compliance because "the harm has already damaged plaintiff soley

by the infliction of the fine." *Mine Workers,* 512 US at 829.

**74.**    "[C]ontempt power... uniquely is liable to abuse. *Bloom,* 391 US, at 202,

quoting *Ex parte Terry,* 128 US 289, 313 (1888).  The [state] court's daily fines represent

an arbitrary exercise of official power, *Bloom,* 391 US, at 202, which requires vacateur."

*Mine Workers,* 512 US at 831.

75.    Here, neither Safeco, Traynor nor Breezy requested compensation or presented any evidence regarding injuries because there was none.  All injuries have been imposed upon plaintiff.  Plaintiff paid for insurance to have her vehicle repaired. Safeco refused to pay under circumstances not of plaintiff's making.  Yet, state court considered plaintiff's pro se status and opted for Commissioners of Court.  None of the defendants complied with the relevant laws.  None even attempted compliance with rules of the court let alone submit a counter memorandum of law or at least gave the impression plaintiff's motions were read.  State court set aside defendants' silence, set aside principles of agency law and presumed to speak in their defense on their behalf.

76.    The sanctionable conduct imposed upon pro se plaintiff did not occur in the court's presence or otherwise implicate the court's ability to maintain court order for adjudication.  The sanctionable conduct was to occur out of court, far removed from judicial oversight and subject to Commissioner of Court state actor, Safeco agent Newbury —12—.  All of this was to occur during the period of COVID pandemic restrictions.

### *Sixth Amendment Right to Jury Trial*

77.    "[The Supreme] Court has recognized that even for state proceedings, the label affixed to a contempt ultimately will not be allowed to defeat the applicable protections of federal constitutional law.  *Hicks v Feiock,* 485 US, at 631.  [The Supreme

---

—12—    Philip T Newbury Jr has a track record.  Newbury was disqualified from appearing in a litigated case as a sanction for professional ethics violations.  See *Streeter v Liberty Mutual Fire Insurance Co.,* No. NNH-CV17-6071117, Supr.Ct. JD New Haven (May 3, 2019).  Newbury was most recently reprimanded again this past July.  See *Stamford Norwalk Judicial District Grievance Panel v Philip Newbury,* Statewide Grievance Committee, No. 19-0584 (July 30, 2021).

Court] conclude[s] that... serious contempt fines imposed... were criminal and constitutionally could not be imposed absent a jury trial." *Mine Workers,* 512 US at 838.

78.     Here, as in Mine Workers, irrespective of the vast difference in the dollar amounts, the serious contempt fines imposed by state court against plaintiff and as apparent agent for Newbury, Traynor and Breezy, are criminal. "A fine... is punitive when it is paid to the court." *Mine Workers,* 512 US at 848.  Plaintiff was not permitted to exercise her fundamental constitutional Sixth Amendment right to jury in defense of her interests.

### *Fifth Amendment Due Process Clause*

79.     The due process clause of the Fifth Amendment provides in relevant part, "No person shall... be deprived of life, liberty, or property, without due process of law..." *United States v. Salerno*, 481 U.S. 739, 746 (1987).

80.     The due process clause protects individuals against two types of state actor action. Substantive due process prevents the state actor from engaging in conduct that shocks the conscience.  See *Rochin v California,* 342 US 165, 172 (1952).  Or when a state actor interferes with rights implicit in the concept of ordered liberty.  See *Palko v Connecticut,* 302 US 319, 325-26 (1937). When a state actor deprives a person of life, liberty, or property and survives substantive due process scrutiny, implementation or procedural due process must be fair.  See *Mathews v Eldridge,* 424 US 319, 335 (1976).

81.     Procedurally, "...before imposing any... sanctions, the court must afford the sanctioned party... a proper hearing on the...sanctions." *Fattibene v Kealey,* 18 Conn. App 344, 352, 558 A.2d 677 (1989).  "There must be fair notice and an opportunity for a hearing on the record." *Id.* At 353.  The court "...need[s] to establish a causal link

between misconduct and fees when acting under inherent authority, given that such undelegated powers should be exercised with especial restraint and discretion." *Roadway Express, Inc. v. Piper,* 447 US 752, 764 (1980).

### Eighth Amendment Excessive Fines Clause
### Cruel and Unusual Punishment

82.    "In identifying cruel and unusual punishments, the Supreme Court has not limited itself to historical conception of impermissible sanctions, but has looked to the evolving standards of deceny that mark the progress of a maturing society." *United States v Reingold,* 731 F.3d 204, 210 (2d Cir. 2013).  "A punishment will be deemed cruel and unusual not only when it is inherently barbaric, but also when it is disproportionate to the crime."  *Id.* citing *Graham v Florida,* 560 US 48, 59 (2010);  see also *Harmelin v Michigan,* 501 US 957, 997-98 (1991).

83.    "Moreover, the trial court must make a specific finding as to whether... a party's conduct... constituted or was tantamount to bad faith, a finding that would have to precede any sanction under the court's inherent powers to impose... fees for engaging in bad faith litigation practices."  *Roadway Express,.* 447 US, at 766  "[F]or example, a party's use of oppressive tactics or its willful violations of court orders." *Fattibene,* 18 Conn.App, at 360-61.

84.    The punitive daily fine of $75 per day is excessive and bears no relationship to any injury on record against any defendant.  To the contrary, the state court's successive contempt orders, first the stay and now this, become more injurious and severe and solely aimed at plaintiff.  The contempt orders rest upon the same issue, Safeco's motion for arbitration where Safeco relied upon and specifically cited General Statute §

24

52-410 (147.00) as Safeco's authority.  Yet, the court's contempt order No.1 omitted this

important material fact and continues to do so.  The omission of § 52-410 was to benefit

defendants.  The fines imposed are excessive and unsupported.  The excessive fines

are cruel and unusual and should be vacated.  Plaintiff is not the litigant who behaves

badly.  In addition to Newbury, Kryzanski also has a substantial track record.

### Fifth Amendment Double Jeopardy Clause

**85.**     The double jeopardy clause provides, no person shall "be subject for the

same offense to be twice put in jeopardy of life or limb." See *Brown v. Ohio*, 432 US 161,

164 (1977).  Double jeopardy prohibits successive prosecutions as well as cumulative

punishment and serves principally as a restraint on courts and prosecutors.  *Id.* At 165-

66.  "[T]he guarantee serves a constitutional policy of finality for the defendant's benefit."

*United States v Jorn,* 400 US 470, 479 (1971).

**86.**     Contempt No.1 was imposed February 21, 2020, for the benefit of the

collective defendants.  The order, though, went well beyond the motion (147.00) ruled

upon.  In one push to prevent plaintiff's addiitonal evidence from entering the record,

state court,

      a.     compelled binding and unrestrictive arbitration upon plaintiff when no such
arbitration clause or agreement existed;

      b.     prohibited plaintiff from relying on discovery admissions from Safeco and
Breezy which, but for the prohibition, plaintiff's complaint would have been
settled in view of the cumulative evidence discovered;

      c.     struck down plaintiff's motion for compromise where the statutory thirty-
day period to accept expired;

      d.     prevented a settlement conference which was scheduled to begin a week
later under the mediation of another judge;

**25**

e.     granted the collective defendants broad and sweeping protective orders to ensure anything overlooked as pending in plaintiff's favor would be rendered invalid on the record;

f.     prevented plaintiff from filing a certificate of closed pleadings;

g.     and when the Appellate dismissed plaintiff's interlocutory appeal for lack of a final judgment where court Order (147.15) could only be applicable to a stay of proceedings because state court did not address § 52-410 procedurally-flawed motion, state court denied plaintiff's motion to have proceedings conform the Appellate finding (191.00);

h.     denied plaintiff any substantive clarification or articulation as to denials issued (197.00; 205.00; 226.00) which prevented plaintiff from moving forward in any manner on her complaint.

**87.**     The flurry of denials, markings *Off*, and all else issued by state court prevented plaintiff from amending her complaint to incorporate material facts discovered through admissions and production of documents and prevented any motion for summary judgment, partial or otherwise.  None of state court's doing was accidental but well-planned and manipulated by the collective defendants.

**88.**     Numerous other proactive attempts by plaintiff (193.00; 209.00; 215.00; 216.00; 219.00)  to encourage state court to consider evidence and allow plaintiff's matter to be heard on the merits failed, all without substantive explanation other than declaring discretionary power to so order.   All the while, Commissioners of Court sat back and allowed state court to act as agent on behalf of their interests.  State court did so even when Kryzanski failed to appear for a remote hearing.

**89.**     The collective defendants lack of substantive motions unsupported in law and state court's consistent lack of substantive clarification and case law relied upon on the core issues prevents the Appellate, at some future time, to make clear and proper determinations absent facts not found.  See *Lacic* v. *Tomas*, 78 Conn. App. 406, 410,

829 A.2d 2003.  A state court cannot be overruled if the record is inadequate for review.

**90.**    The fines issued September 10, 2021, not only are impermissible under the Fifth Amendment double jeopardy clause, but represent an extreme judicial overreach which, under reasonable circumstances, would cause reviewing courts to pause and question the constitutionality of the state court fines.

### Fifth Amendment Takings Clause

**91.**    In *Agins v City of Tiburon*, 447 US 255 (1980), the Supreme Court declared government regulation of private property "effects a taking if [such regulation] does not substantially advance legitimate state interests. . . ." *Id.,* at 260.

**92.**    Where government requires an owner to suffer a permanent physical invasion of her property, however minor, just compensation is required. See *Loretto v Teleprompter Manhattan CATV Corp,* 458 US 419 (1982) *(state law requiring landlords to permit cable companies to install cable facilities in apartment buildings effected a taking).*  The Takings Clause also applies to regulations which completely deprive an owner of "all economically beneficial us[e]" of her property.  See *Lucas v South Carolina Coastal Council,* 505 US 1003, 1019 (1992).

**93.**    Plaintiff's automobile accident occurred November 24, 2018.  Safeco took control of the vehicle November 28, 2018, and has been in possession and control directly or through appointed agents since.  The vehicle remains in a state of disassembly ordered by Safeco's employee Allyn and physically done by Safeco-controlled Breezy on Breezy's private property to which plaintiff does not have access.

**94.**    On February 21, 2020, state court ordered plaintiff to abandon her judicial proceeding and imposed non-judicial binding and restrictive arbitration in substitution.

27

The collective defendants stand as an obstacle to plaintiff's compliance by refusing to statutorily comply with § 52-410. State court set aside such compliance which forces a waiver of plaintiff's rights to an adjudicative process of plaintiff's choice which includes the right of appeal by a reviewing state court.

**95.** State court's civil contempt stay of all proceedings and this criminal contempt imposition of punitive fines at $75 per day each and every day to the court affirms a taking of plaintiff's property without just compesation.

### *Judicial Overreach*

**96.** The First Amendment provides in relevant part, "Congress shall make no law… abridging the freedom of speech…" Judicial overreach and freedom of speech is about compliance with court orders deemed by the Appellate to be substantively and procedurally improper under the core issue of § 52-410. Judicial overreach is about state court awareness of Liberty Mutual and Safeco's legal contradictions when applying § 52-410 (*Klass v Liberty Mutual, supra),* yet forcing waiver of rights upon plaintiff nonetheless.

**97.** The collective defendants neutralization and displacement of plaintiff's action would not survive but for the agency of state court.

### *COVID Pandemic Restrictions*

**98.** The civil contempt order was issued at a time when the COVID pandemic was first revealed to the public which relevation resulted in a public health emergency declared March 10, 2020. Plaintiff is pro se and in a class of population deemed to be at high risk. Restrictions imposed under the public health emergency encouraged no interaction or contact. And although some restrictions have been lifted or modified at a

28

time state court issued the criminal contempt order, plaintiff's high risk classification remains.

94.      Court proceedings, with some exceptions, adjudicate remotely to foster protection of judges and judicial staff.  Yet, state court orders plaintiff into an unknown and unsafe nonjudicial environment countered by a Commissioner of Court with known unprofessional conduct.  State court orders adjudication by unnamed individuals who are not qualified to determine questions of law and application of the law to material facts identified. Such judicial behavior is representative of judicial overreach in a very basic sense.

**Count One:        Appraisal clause violates Fifth Amendment due process. Defendants Liberty Holding Company Inc, Liberty Mutual Insurance Company and Safeco Insurance Company of Illinois**

95.      Plaintiff incorporates by reference allegations of Paragraphs 1 through 94.

96.      The appraisal clause contained in Safeco's Part D automobile insurance policy is ambiguous because the clause,

       a.        waives insured rights while guaranteeing insurer rights
            (see ¶¶ 56-57);

       b.        is incompatible with the language of General Statute §§ 52-408,
            52-409 and 52-410 (see ¶¶ 57- 58);

       c.        lacks a time period certain within which the clause may be invoked
            (see ¶ 59);

       d.        is not standardized form with homeowners fire insurance appraisal
            clauses (see ¶ 60);

       e.        fails to address the application of the clause when questions of law
            and coverage are at issue (see ¶ 61).

**97.**     The collective defendants, jointly and severally, knew or in the exercise of reasonable care, should have known the appraisal clause in Safeco's personal automobile physical damage policy Part D was unenforceable.

**98.**     The collective defendants, jointly and severally, specifically targeted the unenforceable appraisal clause toward the personal automobile insurance market because individual consumers would be ill-equipped to understand and address the issue of enforceability thereby creating an intentional unfair advantage.

**99.**     The appraisal clause violates basic due process rights to which plaintiff is entitled and is ambiguous and, therefore, unenforceable.

**100.**     As a result of the collective defendants' inequitable conduct, plaintiff has been prejudiced and continues to suffer significant harm and criminal penalties for which relief is sought.

**Count Two:**          **Negligence, General Statute § 52-410,**
**Defendants Liberty Holding Company Inc, Liberty Mutual**
**Insurance Company and Safeco Insurance Company of Illinois**

**101.**     Plaintiff incorporates by reference allegations of Paragraphs 1 thru 100.

**102.**     "[A] party cannot be released from liability for injuries resulting from its future negligence in the absence of language that expressly so provides... This rule prevents individuals from inadvertently relinquishing valuable legal rights..." *Hanks v. Powder Ridge Restaurant Corp.*, 885 A. 2D 734, 738, 276 Conn. 314 (2005).

**103.**     "Negligent conduct... is a matter of risk. W. Prosser & W. Keeton, supra, p. 169. It is defined as conduct which falls below the standard established by law for the protection of others against unreasonable risk of harm. Id., quoting 2 Restatement (Second), Torts § 282. Negligence is conduct, and not a state of mind." *American*

30

*National Fire Ins. Co. v. Schuss*, 221 Conn. 768, 776, 607 A.2d 418 (1992).

**104.**   Safeco, jointly and severally, acted with neglect in the application of General Statute § 52-410 when Safeco invoked § 52-410 which invocation Safeco knew or in the exercise of reasonable care should have known, was untimely and lacked proper service of process as mandated in the language and construction of the statute.

**105.**   Safeco, jointly and severally, further acted with neglect when Safeco moved for a stay under § 52-409 to remove future liability which may be found for negligent conduct of Safeco employees who caused plaintiff's harm.

**106.**   Liberty Mutual, jointly and severally, acted with neglect in the application of General Statute § 52-410 because Liberty Mutual knew or in the exercise of reasonable care, should have known, sister company, Safeco, posited application of § 52-410 was done in an improper manner and contrary to the constructive language of the statute which ran contrary to Liberty Mutual's own application of the law.

**107.**   LMH, jointly and severally, acted with neglect beause LMH controlled the business of insurance of Safeco and Liberty Mutual in Connecticut and knew or in the exercise of reasonable care, should have known, both companies substantive and procedural postures contradicted and placed one against the other.  In doing so, LMH neglectfully placed the business of insurance into state court hands to adjudicate substantive core issues which would not be required to be adjudicated but for LMH's negligence.

**108.**   The collective defendants' actions were to coerce plaintiff to relinquish valuable legal rights for the single purpose of exculparting themselves from liability for future negligence.

**109.**   As a result of the collective defendants' negligent conduct, plaintiff has been prejudiced and suffered significant harm and criminal penalties for which relief is sought.

**Count Three:**   **Civil Contempt, Violation of General Statute § 52-410**
**Defendants Howd & Ludorf LLC, Berchem & Moses PC,**
**Phillip T Newbury Jr, Jonthan D Berchem, Daniel H Kryzanski.**

**110.**   Plaintiff incorporates by reference allegations of Paragraphs 1 thru 109.

**111.**   "Contempt is a disobedience to the rules and orders of a court which has power to punish for such an offense. *Com'r v. Colandrea*, 247 A.3D 193, 197, 202 Conn.App. 815 (2021)."To constitute contempt, a party's conduct must be willful. *Id,*198.

**112.**   The collective actions of all defendants clearly demonstrate willfulness to interfere with state court proceedings and § 52-410 of Connecticut General Statutes.

**113.**   "The existence of an agency relationship is generally one of fact." *Conte v. Dwan Lincoln-Mercury, Inc.*, 172 Conn. 112, 124, 374 A.2d 144 (1976). "It is an acknowledged principle of agency law that... all parties who deal with the agent... are bound by its [agents] terms."

**114.**   "[T]he three elements required to show the existence of an agency relationship include: (1) a manifestation by the principal that the agent will act for him; (2) acceptance by the agent of the undertaking; and (3) an understanding between the parties that the principal will be in control of the undertaking. Restatement (Second), 1 Agency § 1, comment b (1958)." *Gateway Co v DiNoia,* 232 Conn. 223, 240, 654 A.2d 342 (1995). See also, *LeBlanc v. New England Raceway, LLC,* 116 Conn. App. 267, 274 (2009).

115.   H&L Law has been and is an agent for LMH, Safeco and Liberty Mutual wherein Newbury provided agency services on behalf of H&L Law while at the same time, exercised his licensed capacity of Commissioner of Court as state actor.

116.   Berchem Law has been and is an agent for Traynor Collision Center wherein Berchem provided agency services on behalf of Berchem Law while at the same time, exercised his licensed capacity of Commissioner of Court as state actor.

117.   Kryzanski, as an unregistered Law Office and sole practioner, has been and is an agent for Breezy Point Auto Body Inc wherein Kryzanski provided agency services on behalf of his unregistered Law Office while at the same time, exercised his licensed capacity of Commissioner of Court as state actor.

118.   "Apparent authority must be derived not from the acts of the agent but from the acts of his principal. [T]he acts of the principal must be such that (1) the principal held the agent out as possessing sufficient authority to embrace the act in question, or knowingly permitted him to act as having such authority, and (2) in consequence thereof the person dealing with the agent... reasonably believed, under all the circumstances, that the agent had the necessary authority." *Lettieri v American Savings Bank,* 182 Conn. 1, 8, 437 A.2d 822 (1980).

119.   The collective Commissioners of Court, on behalf of their respective law firms, performed as agents and apparent agents for LHC, Safeco and Liberty Mutual.

120.   The collective Commissioners of Court had a statutory duty to comply with Connecticut General Statutes generally and with § 52-410 specifically which in fact, they did not do.

121.   "[I] t is a general rule of agency law that the principal in an agency relationship is bound by, and liable for, the acts in which his agent engages with authority from the principal, and within the scope of the [agency relationship]." *Lougherty v Future Century Limousine LLC,* No. 11 Civ. 5108 (PGG) (S.D.N.Y. Sept. 24, 2013).

122.   Procedural manipulation by the collective defendants rise to the level of prejudicial collateral consequences which deprived plaintiff of her right to be heard in a meaningful way.  See *Putman v Kennedy,* 279 Conn.162, 169, 900 A.2d 1256 (2006).

123.   All defendants are jointly and severally liable based upon their collective actions which such acts and/or omissions are the proximate cause of plaintiff's injuries.

124.   The deceitful collective actions of all defendants constitute inequitable conduct.  See *Therasense, Inc v Becton Dickinson & Co.* 649 F.3d 1276, 1287 (Fed. Cir 2011).

125.   The inequitable conduct of all defendants harmed plaintiff to her financial detriment to which relief is required.

126.   The collective actions of all defendants were violative of the General Statute § 52-410 and support a finding of liability and entry of civil contempt.

**Count Four:       Abuse of Process of General Statute § 52-410, All Defendants.**

127.   Plaintiff incorporates by reference allegations of Paragraphs 1 thru 126.

128.   Using the judicial process "to gain a collateral advantage extraneous to the merits" of a case is an abuse of process under Connecticut law. *Doctor's Assocs. Inc v Weible,* 92 F.3d 108, 114 (2d Cir. 1996).

129.   The collective defendants' actions constitute the use of a legal process in an improper manner and primarily to accomplish a purpose for which contractual proceedings were not designed.  See *Idlibi v Ollennu,* (AC 42697) (Conn. App. Ct. July 6, 2021) citing *Mozzochi v. Beck* 204 Conn. 490, 495, 529 A.2d 171 (1987) *(an attorney may be sued for misconduct by those who have sustained a special injury because of an unauthorized use of legal process).*

130.   Plaintiff's claim is grounded upon the business of insurance which is highly regulated by industry standards imposed by state and federal statutes, regulations, and court orders and form a comprehensive policy framework in which such businesses are required to perform.

131.   The factual record demonstrates the collective defendants made a conscious decision to depart from the required applicable standards and deliberately engaged in a pattern of conduct intended to prevent plaintiff's action from proceeding through to adjudication on the merits in violation of plaintiff's constitutional due process rights.

132   The collective defendants' cumulative violations involve a conscious, systematic departure from known, clearly defined standards and policies reflected in Connecticut, federal, and national statutory and regulatory requirements as alleged herein which were established to prevent abuses of the judicial system which caused plaintiff three years of unabated substantial financial and emotional harm and loss of her property.

133.   The cumulative conduct of the collective defendants demonstrates willful, knowing, calculated, deceitful, and negligent conduct with reckless indifference to

plaintiff's rights." See *Ulbrich v Groth,* 310 Conn. 375, 410 n.31, 78 A.3d 76 (2013).

134.   The collective defendants acting under dual color of Commissioners of Court and agents on behalf of principals, are volative of General Statutes § 52-410 and constitutes abuse of the judicial process.

**WHEREFORE,** plaintiff claims as to all counts,

1.   Remedies pursuant to General Statute § 52-29;

2.   An order vacating contempt Order 223.50 issued September 10, 2021, and all claimed expenses relating thereto;

3.   An order vacating contempt Order 147.15 issued February 21, 2020, and all claimed expenses relating thereto;

4.   A judicial determination of plaintiff's due process rights rights and other legal relations of the parties and such other and further relief as justice requires;

5.   Count One, a finding of ambiguity and such other and further relief;

6.   Count Two,  a finding of negligence and such other and further relief;

7.   Count Three, a finding of civil contempt violative of General Statute § 52-410 and such other and further relief;

8.   Count Four, a finding of abuse of process violative of General Statute § 52-410 and such other and further relief;

9.   Such other relief as this Court may deem just, reasonable and equitable.

Respectfully submitted,

/ s / Dorothy A Smulley
Dorothy A Smulley
Plaintiff, self-represented
408 Bar Harbour Road
Stratford CT 06614
tel/fax 203 386 0171
email frrancesca04@gmail.com